**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOUTHWEST MARINE, INC., Petitioner, vs. UNITED STATES and HON. GORDON R. ENGLAND, SECRETARY OF THE NAVY (In his official capacity), Respondents. | CASE NO. 05-CV-1189 WQH (RBB) **AMENDED ORDER DENYING SOUTHWEST MARINE, INC.'S MOTION FOR SUMMARY JUDGMENT** |

HAYES, Judge

## I. Introduction

By Motion for Summary Judgment, Southwest Marine, Inc. ("SWM") appeals a decision by the Armed Services Board of Contract Appeals ("ASBCA"). The ASBCA ruled that the nearly $3 million in attorney fees for which Southwest Marine, Inc. ("SWM") sought reimbursement were unallowable costs under the Federal Acquisition Regulations ("FAR"), and that the Department of the Navy therefore properly denied them. There are no factual issues to be determined; SWM challenges only the ASBCA's legal conclusions. The Court heard the parties' oral arguments on February 24, 2006, and issued an Order denying SWM's Motion on May 25, 2006. SWM subsequently filed a motion for reconsideration, which the Court granted after hearing further oral argument on October 10, 2006. In the Order granting SWM's Motion for Reconsideration, the Court vacated its May 25, 2006 Order. The Court now issues the following Amended Order affirming the ASBCA's ruling.

//

## II. Background

### A.      The CWA Litigation and Denial of SWM's Request for Reimbursement

In 1996, the National Resources Defense Council ("NRDC") sued SWM in the Southern District of California for violation of the Clean Water Act ("CWA"). The E.P.A. chose not to become involved. The NRDC won the case in 1999, which resulted in imposition of a provisional $799,000 penalty against SWM for violation of the CWA. This penalty was subsequently offset in its entirety by credit for environmental investments made by SWM.[1] In addition, SWM was ordered to pay approximately $1.5 million for the NRDC's attorney fees, and approximately $1.3 million for its own attorney fees. SWM sought reimbursement from the Department of the Navy for a portion of the legal fees (both its own, and the NRDC's) pursuant to FAR provisions incorporated into SWM's cost accounting contracts with the Navy.

FAR § 31.205-33 permits the recovery of "[p]rofessional and consultant service costs," including "services acquired by contractors or subcontractors in order to enhance their legal . . . positions. . . . ([B]ut see 31.205-30 and 31.205-47)." 48 C.F.R. §§ 31.205-33(a) and (b). FAR § 31.205-47 is entitled "Costs related to legal and other proceedings," and provides, in pertinent part:

> Costs incurred in connection with any proceeding brought by a Federal, State, local, or foreign government for violation of, or a failure to comply with, law or regulation by the contractor (including its agents or employees), or costs incurred in connection with any proceeding brought by a third party in the name of the United States under the False Claims Act, 31 U.S.C. 3730, are unallowable if the result is--
> . . .
> (2) In a civil or administrative proceeding, either a finding of contractor liability where the proceeding involves an allegation of fraud or similar misconduct or imposition of a monetary penalty where the proceeding does not involve an allegation of fraud or similar misconduct.

48 C.F.R. § 31.205-47(b). SWM had incurred its legal costs in connection with a proceeding brought by the NRDC, rather than a governmental entity or qui tam relator, but had been assessed with a monetary penalty–albeit one that was eventually offset–payable to the U.S. Treasury, for violation of the CWA. The Contracting Officer denied reimbursement of SWM's legal costs–and those of the NRDC, which SWM had been ordered to pay–as unallowable, and SWM appealed this determination to the ASBCA.

---

[1]The Ninth Circuit affirmed, and the District Court retained jurisdiction through 2002, for purposes of administering the penalty/credit scheme it had devised.

**B. The ASBCA Decision**

The ASBCA upheld the disallowance, finding the costs unallowable under the Federal Circuit's holding in *Boeing North American, Inc. v. Roche,* 298 F.3d 1274 (Fed. Cir. 2002). *Boeing North American* involved legal costs incurred in defending a shareholder derivative suit alleging insufficient fraud controls in the wake of a series of criminal and civil fraud actions against Boeing's predecessor-in-interest, Rockwell. *See* 298 F.3d at 1276-78. The Federal Circuit ruled that "Boeing's conclusion that the costs are allowable rests on a fundamentally flawed assumption–that the only professional service costs that are not allowable under FAR § 31.205-33 are those costs that are specifically disallowed under another FAR provision." *Id.* at 1285. Instead, the court held that the costs of unsuccessfully defending a private suit charging contractor wrongdoing are not allowable if the "similar" or "related" costs would be disallowed under the regulations. *Id.* at 1286-87. In so ruling, the court relied upon FAR § 31.204, which states, in pertinent part:

> Section 31.205 does not cover every element of cost. Failure to include any item of cost does not imply that it is either allowable or unallowable. The determination of allowability shall be based on the principles and standards in this subpart and the treatment of *similar or related* selected items. . . . [T]he determination of allowability shall be based on the guidance contained in the subsection that most specifically deals with, or best captures the essential nature of, the cost at issue.

48 C.F.R. § 31.204(c) (emphasis added).[2]

In the instant matter, the Government argued before the ASBCA that, under *Boeing North American*, SWM's legal costs from the CWA litigation were "similar" to those disallowed by FAR

[2]Although the costs incurred defending the Rockwell shareholder derivative suit were not "similar" to any of the disallowed costs under the regulations, the court stated: "However, we must also consider whether those costs are 'related' to a category of disallowed costs, that is, costs of defending against government charges of contractor wrongdoing." *Boeing North American,* 298 F.3d at 1287. The Federal Circuit reasoned that "[t]he costs of defending against the majority of the five charges of wrongdoing alleged in the [shareholder derivative suit] would be disallowed if Rockwell had sought to recover those costs from the government." *Id.* at 1287 n. 14. Citing FAR § 31.205-47, the court noted that "statutes and regulations make clear that a contractor's legal costs incurred in the unsuccessful defense of four of the suits brought by the government here against Rockwell"–out of which suits the shareholder derivative action arose–"were not allowable." *Id.* However, the court ruled that, "[i]n order for a cost to be 'related,' there must be a more direct relationship to the disallowed cost." *Id.* at 1287. The court stated: "The required direct relationship, we think, would exist here if there were a judicial determination that the Rockwell directors had failed to maintain adequate controls to prevent the occurrence of the wrongdoing against the government. But no such judicial determination has in fact been made. Rather, the [shareholder derivative] suit was settled." *Id.* at 1287-88. The court therefore remanded, with the instruction that, "[o]n remand, the Board may allow the costs only if it determines that the plaintiffs in the [shareholder derivative] lawsuit had 'very little likelihood of success on the merits' of prevailing." *Id.* at 1290.

§ 31.205-47(b)(2), and therefore unallowable.  SWM argued that its costs were not similar to those disallowed by FAR § 31.205-47(b)(2), but were instead allowable under FAR § 31.205-33.  The ASBCA agreed with the government, concluding that SWM's costs incurred in defending the NRDC's CWA lawsuit, even though brought by a private party, were "similar" to the costs of defending a CWA action brought by the government.  In reaching this conclusion, the ASBCA reasoned that both the private party and government-initiated lawsuits were for violation of federal law; both involved imposition of a monetary penalty payable to the U.S. Treasury; and, although the proceeding against SWM had not been initiated by a governmental entity, the NRDC had brought the case as a "private attorney general" under the CWA.

While recognizing that the costs of defending a private party lawsuit resulting in imposition of a monetary penalty payable to the U.S. Treasury are not expressly covered by the FAR, and that various differences exist between government and private third party plaintiffs, the ASBCA concluded: "[W]e do not believe that any such distinctions render private/government actions for CWA enforcement dissimilar so as to preclude the application of subsection 205-47(b)(2) of the FAR cost principles."  In so ruling, the ASBCA–as did the *Boeing North American* court–made particular note of FAR § 31.204.  The ASBCA rejected SWM's argument that the regulatory framers' decision not to expressly disallow a contractor's legal costs in the unsuccessful defense of a CWA action brought by a private party reflected an intent to allow such costs, noting in particular that the Federal Circuit in *Boeing North American* had rejected an analogous argument by the contractor.  Relying upon *Boeing North American* and FAR § 31.204(c), the ASBCA held that SWM's legal costs were similar to the unallowed legal costs set forth in FAR § 31.205-47(b)(2), the subsection "that most specifically deals with, or best captures the essential nature of, the cost at issue."  48 C.F.R. § 31.204(c).  SWM now appeals that ruling.

**C.     The Instant Appeal**

In the instant appeal of the ASBCA's decision, SWM contends that the Federal Circuit's *Boeing North American* decision is "bad law," on the grounds that it is contrary to, or fails to account for, 10 U.S.C. § 2324, of which FAR § 31.205-47 is the regulatory implementation.  (Pet'r's Mot. for Summ. J. 17.)  Title 10 U.S.C. § 2324(k), which is the codification of the 1988 Major Fraud Act,

expressly disallows costs incurred by a contractor in connection with criminal, civil, and administrative proceedings commenced by the United States or a State, where the proceeding relates to a violation of, or failure to comply with, a Federal or State statute or regulation, and results in either: conviction; a determination of contractor liability in the case of a civil or administrative proceeding involving an allegation of fraud; or imposition of a monetary penalty by reason of the violation of, or failure to comply with, a Federal or State statute or regulation. *See* 10 U.S.C. § 2324(k).

A purpose of the Major Fraud Act was to prevent situations in which the government pays for both sides of a lawsuit–i.e., both its prosecution, and the contractor's costs in defending it. SWM contends that the rule announced by the Federal Circuit in *Boeing North American* sanctions an application of FAR § 31.205-47(b) that Congress never intended: the disallowance of costs incurred in defending private party lawsuits in which the government had no involvement, and did *not* finance both sides' legal costs. SWM also points to the language of 10 U.S.C. § 2324(f), which requires the FAR to include detailed and specific provisions on the allowability of contractor legal costs. SWM contends that this language precludes application of the "similar or related to" principle in the manner in which it was applied by the Federal Circuit in *Boeing North American*, and by the ASBCA in the instant matter. In sum, SWM asserts that the ASBCA's application of the "similar or related to" principle to FAR § 31.205-47(b) in order to disallow SWM's legal costs, was contrary to, or exceeded the scope of 10 U.S.C. § 2324 and congressional intent.

In addition, SWM contends that the penalty imposed in the CWA litigation was not actually a penalty within the meaning of the applicable regulations, on the grounds that it was subsequently offset by credits. Therefore, SWM argues, even if the "similar or related to" principle can be properly applied, the ASBCA incorrectly concluded that SWM's legal costs were "similar" to the unallowable costs set forth in FAR § 31.205-47(b)(2), which provide for disallowance of legal costs incurred in connection with proceedings which result in imposition of monetary penalties payable to the U.S. Treasury. SWM also challenges the ASBCA's conclusion that a proceeding brought by a "private attorney general" under the CWA is similar to an action brought by a governmental entity or qui tam relator, the legal costs of which are expressly disallowed by FAR § 31.205-47(b).

**III. Jurisdiction**

Although the vast majority of appeals from the ASBCA go to the Federal Circuit, "where the government contract at issue is maritime, appeals from the ASBCA go instead to district courts, whence they can be further appealed to the regional courts of appeals." *Southwest Marine, Inc. v. United States*, No. 94-1083-IEG (LSP), 1995 WL 874277, * 1 (S.D. Cal. Aug. 4, 1995) (Gonzalez, J.) (citing *Southwest Marine Inc. v. United States*, 43 F.3d 420, 423-24 (9th Cir. 1994)). Accordingly, the Court has jurisdiction over the instant appeal.

**IV. Standard of Review**

There are no factual issues to be determined in this case; instead, the Court's review is confined solely to questions of law, and is therefore *de novo*. *See id.* at * 2. The government has contended that the ASBCA's interpretation of the FAR is entitled to "due respect," and support exists for this proposition. *See, e.g., Lear Siegler Servs., Inc. v. Rumsfeld*, 457 F.3d 1262, 1266 (Fed. Cir. 2006) ("The Board's interpretation of a contract is not final, and is subject to *de novo* review on appeal, although due respect is often warranted by the Board's experience in interpreting the Federal Acquisition Regulation (FAR)."). At the same time, however, the Court must remain mindful of the general rule against deferring to the ASBCA's interpretations of statutes and regulations. *See Brownlee v. Dyncorp*, 349 F.3d 1343, 1349 (Fed. Cir. 2003) ("We review the Board's decision interpreting statutes and regulations without deference."); *Boeing North American, Inc. v. Roche*, 298 F.3d 1274, 1280 (Fed. Cir. 2002) ("Legal determinations of the Board are reviewed without deference.").

Accordingly, the Court determines, *de novo*, whether the ASBCA correctly interpreted and applied the FAR. Then, if the ASBCA's interpretation of the FAR is found to be correct, the Court applies the two-part analysis set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to address the newly-raised legal issue of whether 10 U.S.C. § 2324 is silent or ambiguous as to the precise question at issue, and, if so, whether the FAR provisions applied in the instant matter constitute a permissible interpretation of that statute.

//

//

## V. Discussion

### A. SWM's Legal Argument Not Raised Below

The Ninth Circuit "will generally not consider an issue raised for the first time on appeal," but will do so "(1) in an 'exceptional' case when review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a new issue arises while appeal is pending because of a change in law, or (3) when the issue is purely one of law and the necessary facts are fully developed." *Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir. 1986) (citing *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)). Moreover, the Ninth Circuit has stated that it "review[s] legal issues on appeal de novo, whether or not they were raised below . . . ." *United States v. United States District Court for the Southern District of California*, 384 F.3d 1202, 1205 (9th Cir. 2004) (citing *United States v. Castro*, 887 F.2d 988, 996 (9th Cir. 1989)). The Court concludes that the issue raised for the first time in this appeal by SWM is purely one of law, and that the necessary facts are fully developed. Therefore, the Court will consider SWM's legal argument pertaining to 10 U.S.C. § 2324.

### B. The ASBCA Correctly Interpreted the FAR as Disallowing SWM's Legal Costs

Under the *de novo* standard of review, the Court finds the ASBCA's application of the FAR to be correct. FAR § 31.204 provides that "[f]ailure to include any item of cost [in the FAR] does not imply that it is either allowable or unallowable." FAR § 31.204(d). Instead,

> [t]he determination of allowability shall be based on the principles and standards in this subpart and the treatment of *similar or related* selected items. . . . When a cost, to which more than one subsection in 31.205 is relevant, cannot be apportioned, the determination of allowability shall be based on the guidance contained in the subsection that most specifically deals with, or best captures the essential nature of, the cost at issue.

*Id.* (emphasis added). In *Boeing North American*, the Federal Circuit upheld application of FAR § 31.204 in disallowing legal costs "similar or related" to those disallowed by FAR § 31.205-47(b). *See* 298 F.3d at 1286-88. While the Federal Circuit's rulings are not binding on this Court, they are strongly persuasive.

The Court concludes that the ASBCA correctly applied FAR § 31.204's "similar or related" principle in conjunction with FAR § 31.205-47(b) in upholding the disallowance of SWM's legal

costs. The ASBCA correctly concluded that SWM's legal costs in defending against a CWA lawsuit brought by an entity acting as a private attorney general, where the result was imposition of a monetary penalty payable to the U.S. Treasury, were similar to costs disallowed by FAR § 31.205-47(b), which best captures the essential nature of the legal costs at issue. Indeed, beyond objecting to the overall validity of applying section 31.204's "similar or related" principle to section 31.205-47(b), SWM articulates no real argument as to why the ASBCA erred in finding a CWA private attorney general action similar to the government-commenced proceedings set forth in section 31.205-47(b).

Moreover, the Court finds that the ASBCA correctly concluded that a penalty was imposed. With respect to the $799,000 penalty imposed by the Court (Brewster, J.) in the lawsuit brought by the NRDC, the ASBCA held: "That this penalty was ultimately offset by a credit for [SWM's] capital improvements . . . does not negate the existence of the penalty." The Court's September 7, 1999 Findings of Fact and Conclusions of Law provided, in pertinent part, as follows:

> 51. **<u>Penalty Amount</u>**. The Clean Water Act mandates civil penalties for the violations found in this lawsuit. <u>See</u> 33 U.S.C. § 1319(d). Such penalties may not exceed $25,000 per day. <u>Id.</u> Orders issued by this Court on November 30, 1999 [sic] and January 28, 1999 have concluded that civil penalties are available to the Plaintiffs. While civil penalties are not mandatory if the Court finds violations, the amount assessed is wholly within the discretion of the court. . . . "In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C. § 1319(d).
>
> 52. The Court does not believe such factors can be mechanistically applied. Any violation of the Clean Water Act should be regarded as serious. However, Defendant's violations have not been willful in the sense of a specific intent to violate. Moreover, while this Court has concluded that there is a link between the violations and harm to the Bay, the causation is less than direct. There has been no showing that any particular valuation has resulted in immediate harm; the effect is apparent when taken on a cumulative basis. Defendant's experts have convinced the Court that the harms caused are not grave ones, at least in the context of the already polluted conditions. Such a conclusion allows the Court to find that Defendant did not act with deliberate indifference to the health of the Bay. Certainly, this is not a case of massive spills and fish kills. The Court also believes that Defendant has made good faith efforts to meet the dictates of the Act's requirements, though it has fallen short with regard to implementation. However, failure to meet the standards required by the Act have resulted in an economic benefit to Defendant.
>
> 53. The Court is aware that Defendant's improvements have resulted from significant investment. But those investments were as required. Shortfalls have come from a lack of sufficient attention and application of dollars and manpower. Moreover, Defendant's efforts were prodded in significant measure by this lawsuit. To achieve the goal of deterrence, a penalty must be high enough so that the discharger cannot

"write it off" as an acceptable environmental trade-off for doing business. . . .

54. Based on a review of the facts of this case, as applied to the above-required factors, the Court imposes a penalty of $1,000 per day for each day Defendant has been in violation of the Act through poor implementation of its plans from the date of the filing of the lawsuit–August 27, 1996–until the day before trial, November 3, 1998, for a total of 799 days, or $799,000. Payment of this provisional penalty will be held stayed for a period of three years from the date of the filing of this Decision.

55. **Credits against the provisional penalty.** The penalty upon Defendant shall be reduced for direct costs incurred only for the following expenditures: (1) after the date of filing of the lawsuit, steps taken to improve its stormwater diversion system; and (2) for steps taken by Defendant with regard to changes in its physical plant to comply with this Decision. Direct costs are defined to include labor and materials. . . .

56. Defendant may record the direct costs associated with these improvements and present this record to the magistrate judge after expiration of the three-year period for the Court's review. Plaintiffs may file a response to this filing. Once the court has determined an appropriate credit, based on review of the parties' filings, such credit will be subtracted from the provisional penalty. At that time, any penalty remaining shall be paid to the U.S. Treasury, with interest at the legal rate from the date of this Decision. Any credits in excess of the penalty will mean no penalty shall be owed to the U.S. Treasury but otherwise have no effect. . . .

57. The intent of the Clean Water Act is to maintain and protect the waters of the United States. The Court believes that the penalty/credit remedy established by this Decision will better serve to forward that intent than simple penalties.

(Jones Decl. in support of Pet'r's Mot. for Summ. J., Exh. 23 (Case No. 96-CV-1492 B (AJB), doc. # 355).)

On December 19, 2000, the Ninth Circuit affirmed the Court's decision. *See Natural Resources Defense Council v. Southwest Marine, Inc.*, 236 F.3d 985 (9th Cir. 2000). In its opinion, the Ninth circuit ruled:

[T]he amount of the penalty actually is *$799,000 minus the cost of such physical alterations*. In challenging the injunction, Defendant presented evidence that *one* such alteration–the installation of a storm-water diversion system–would cost more than $1 million *by itself*. Accordingly, anticipated alterations, when offset against the $799,000 civil penalty, will reduce the penalty to zero. In the circumstances, we cannot agree that the penalty is excessive, and we hold that the district court did not abuse its discretion.

236 F.3d at 1002 (emphasis in original).

On May 7, 2002, Magistrate Judge Battaglia reviewed SWM's submission of direct costs and found "that the direct costs incurred by SWM . . . to comply with the District Court's decision exceed $799,000.00. . . . As a result, the Court recommends a finding that no penalty shall be owed to the U.S. Treasury." (Jones Decl., Exh. 30 (Case No. 96-CV-1492 B (AJB), doc. # 530).) The Court

adopted Magistrate Judge Battaglia's recommendation on June 5, 2002. SWM contends that the ASBCA "misconstrued the result of NRDC v. SWM in this Court." (Pet'r's Mot. for Summ. J. 22.) SWM asserts that "the 'result' of NRDC v. SWM was plainly not 'imposition of a monetary penalty.' The penalty that was formulated by the District Court was characterized by the Court itself as a 'provisional penalty.'" (*Id.* 23.) In response, the Government contends, "[t]he fact that the District Court provided Southwest an incentive to spend monies fixing the cause of its CWA violations as opposed to direct payments to the U.S. Treasury, does not lessen the fact that the District Court imposed a penalty upon Southwest." (Resp't's Opp. to Mot. for Summ. J. 24.) Moreover, the Government points out, penalties under the CWA are mandatory; thus, a finding that no penalty was imposed would not comport with the mandatory requirement of the CWA, which the Court recognized and relied upon in the NRDC litigation, regardless of its having framed SWM's penalty as "provisional" in nature.

The Court concludes that a monetary penalty of $799,000 was imposed, despite SWM's having been provided the opportunity to offset it at a future time with credits for capital improvements in accordance with the Court's September 7, 1999 decision. The penalty was mandatory under the CWA, and is not nullified by the fact that, after those capital improvements were made, no monetary amount remained owing to the U.S. Treasury. As the Court stated in its decision, "[a]ny credits in excess of the penalty will mean no penalty shall be *owed* to the U.S. Treasury *but otherwise have no effect*." (Jones Decl., Exh. 23 (Case No. 96-CV-1492 B (AJB), doc. # 355) (emphasis added).) Reading this to mean that no penalty payable to the U.S. Treasury was *imposed* comports with neither the CWA nor the plain text of the Court's decision.

The Court further finds that the ASBCA ruled correctly with respect to the disallowance of the NRDC's legal costs, which SWM was required to pay. Those costs do not relate to any service or representation rendered for or obtained by SWM in order to enhance its position, within the meaning of FAR § 31.205-33(a).[3] Lastly, the Court will not "determine whether [SWM's legal] costs can be apportioned and which of the portions are more similar to legal costs allowable under 31.205-33 or

---

[3]Moreover, if the government were to pay the NRDC's costs, then it would find itself financing both sides of a lawsuit involving violation of federal law–the very situation the 1988 Major Fraud Act was enacted to avoid.

to costs of proceedings that are unallowable under 31.205-47(b)." (Reply in support of Mot. for Recons. 6.) This argument raised by SWM for the first time in SWM's reply brief in support of its Motion for Reconsideration of the Court's May 25, 2006 Order, and the Court finds no need for apportionment. FAR § 31.204 provides that "[w]hen more than one subsection in 31.205 is relevant to a contractor cost, the cost shall be apportioned among the applicable subsections . . . ." FAR § 31.204(d). With respect to the legal costs here at issue, there is no other specific FAR provision relevant to the costs at issue.

**C. <u>The FAR Provisions at Issue Are Permissible Interpretations of 10 U.S.C. § 2324</u>**

In its May 25, 2006 Order, in response to SWM's contention that 10 U.S.C. § 2324 spoke directly to the question at issue, the Court applied a *Chevron* analysis to determine: (1) whether the statute was silent or ambiguous as to the costs which the ASBCA determined were disallowed by the FAR; and (2) whether the ASBCA's interpretation of the FAR amounted to a permissible construction of 10 U.S.C. § 2324. The Court concluded that 10 U.S.C. § 2324 was either silent or ambiguous as to the precise question at issue, and that the ASBCA's construction of the FAR constituted a permissible construction of that statute. SWM then moved for reconsideration, contending that the Court had erroneously given *Chevron* deference to the ASBCA's interpretation of the FAR, as opposed to the FAR itself. The Court granted SWM's Motion for Reconsideration, concluding that the appropriate inquiry is to first determine, *de novo*, whether the ASBCA correctly interpreted the FAR; and then to apply a *Chevron* analysis to the issue of (a) whether 10 U.S.C. § 2324 speaks to the precise costs at issue, and (b) whether the applicable FAR provisions–as opposed to the ASBCA's ruling–constitute a permissible construction of 10 U.S.C. § 2324. The Court now finds that the statute is silent as to the precise question at issue: the allowability of a contractor's legal costs incurred in connection with a private party lawsuit for violation of federal law, resulting in imposition of a monetary penalty payable to the U.S. Treasury. The Court concludes that FAR §§ 31.204 and 31.205-47(b), which together disallow SWM's claimed legal costs, are permissible constructions of section 2324.

Title 10 U.S.C. § 2324(k) provides, in pertinent part, as follows:

**§ 2324. Allowable costs under defense contracts.** . . .

> **(e) Specific costs not allowable.–(1)** The following costs are not allowable under a covered contract:
>
> . . .
>
> > **(O)** Costs incurred by a contractor in connection with any criminal, civil, or administrative proceeding commenced by the United States or a State, to the extent provided in subsection (k).
>
> . . .
>
> **(k) Proceeding costs not allowable**. – **(1)** Except as otherwise provided in this subsection, costs incurred by a contractor in connection with any criminal, civil, or administrative proceeding commenced by the United States or a State are not allowable as reimbursable costs under a covered contract if the proceeding (A) relates to a violation of, or failure to comply with, a Federal or State statute or regulation, and (B) results in a disposition described in paragraph (2).
>
> > **(2)** A disposition referred to in paragraph (1)(B) is any of the following:
> > **(A)** In the case of a criminal proceeding, a conviction (including a conviction pursuant to a plea of nolo contendere) by reason of the violation or failure referred to in paragraph (1).
> > **(B)** In the case of a civil or administrative proceeding involving an allegation of fraud or similar misconduct, a determination of contractor liability on the basis of the violation or failure referred to in paragraph (1).
> > **(C)** In the case of any civil or administrative proceeding, the imposition of a monetary penalty by reason of violation or failure referred to in paragraph (1).

10 U.S.C. § 2324. By enacting section 2324(k) in 1988 pursuant to the Major Fraud Act, Congress intended to disallow contractor legal costs in situations where the United States would otherwise find itself financing both sides of a lawsuit. *See Fluor Hanford, Inc. v. United States*, 66 Fed. Cl. 230, 232 (2005) ("Passage of the Major Fraud Act reflected the desire of Congress to avoid paying for a contractor's defense when the Government was also prosecuting the case.") (citing 134 *Cong. Rec.* S16697-01 (daily ed. Oct. 18, 1988), setting forth statement of Sen. Grassley, noting that statute's purpose is to avoid requiring taxpayers to pay for both sides of a legal dispute).[4]

SWM emphasizes that 10 U.S.C. § 2324(k), which specifically enumerates certain unallowable legal costs, could have specifically disallowed costs incurred in defending private party lawsuits for violation of federal or state law resulting in imposition of monetary penalties, but did not. SWM contends that 10 U.S.C. § 2324(k) "contains no provision for regulations to expand, detract from,

---

[4]As Senator Grassley explained in 1988, by enacting section 2324(k), "Congress sought to avoid '[t]he anomalous result . . . [of] the same Government that prosecutes the fraud case pay[ing] the cost of defense. We as taxpayers pay twice–we fund the prosecution . . . through the Agency's budgets; then we subsidize the contractor and their high priced lawyers.'" *Fluor Hanford*, 66 Fed. Cl. at 234 n. 8 (quoting 134 *Cong. Rec.* S16697-01 (daily ed. Oct. 18, 1988)).

modify or even to illuminate its terms," and that by enacting it, "Congress has addressed exactly and completely the question what costs of legal proceedings are to be unallowable." (Pet'r's Mot. for Summ. J. 13.) Thus, SWM asserts that by enacting § 2324(k), Congress spoke unambiguously and completely, and left no latitude for further regulatory interpretation or extension of the statutory mandate. SWM maintains that the *Boeing North American* decision, which sanctioned application of the FAR § 31.204 "similar or related to" principle to costs including those disallowed by § 31.205-47, "fail[ed] to apply, analyze or even to mention the statute that authorizes and controls the regulations on allowability of costs of legal services." (*Id.* 19.)

In addition, SWM directs the Court's attention to 10 U.S.C. § 2324(f), which provides, in pertinent part, as follows:

> **(f) Required regulations. – (1)** The Federal Acquisition Regulation shall contain provisions on the allowability of contractor costs. Such provisions shall define in detail and in specific terms those costs which are unallowable . . . . The regulations shall, at a minimum, clarify the cost principles applicable to contractor costs of the following:
> . . .
> **(H)** Professional and consulting services, including legal services.

10 U.S.C. § 2324(f)(1). SWM argues that the application of FAR §§ 31.204 and 31.205-47(b) to disallow the legal costs at issue violates the requirement of 10 U.S.C. § 2324(f) that "provisions shall define in detail and in specific terms those costs which are unallowable."

The Government contends that 10 U.S.C. § 2324(k) "contains no language that suggests that the specific costs identified [therein] as unallowable is a definitive list of <u>all</u> legal costs that are considered unallowable." (Opp. to Mot. for Summ. J. 14.) The Government further notes that section 2324(k) was enacted in 1988, as part of the Major Fraud Act of 1988,[5] and asserts that at the time the Major Fraud Act was enacted,

> the FAR contained section 31.204, which expressly provides that [section 31.205] "does not cover every element of cost" and that "[f]ailure to include any item of cost does not imply that it is either allowable or unallowable." 48 C.F.R. § 31.204(c) (<u>see</u> 48 C.F.R. § 31.204 (Sept. 19, 1983), 48 FR 42102). . . . In passing its amendments to section 2324(k), Congress made no mention of FAR 31.204, nor did it specify that this long-standing FAR principle did not apply to the costs identified in section 2324.

(*Id.*) Moreover, the Government states that "the pertinent language of section 2324(f) was . . . first

[5] Pub. L. No. 100-700, 102 Stat. 4631, sec. 8 (November 19, 1988).

enacted by Congress in 1985," predating the 1988 Major Fraud Act and the enactment of section 2324(k), while coming decades after the issuance of FAR 31.204 and its predecessor, ASPR 15-204. (*Id.* 15.) Relying on the principle that "Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute," *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 802-03 (1985), the Government argues that "Congress is presumed to know the central importance of section 31.204 in understanding the manner in which the Government determines cost allowability," and that "[t]he same is true with regard to section 2324(f)." (Resp't's Opp. to Mot. for Summ. J. 15.)

The Court finds the government's arguments persuasive. "Congress ratifies an administrative interpretation of a statutory provision when it amends the statute without altering that provision." *United States v. Ray*, 375 F.3d 980, 990 (9th Cir. 2004) (citing *Lindahl*, 470 U.S. at 783 n. 15 ("'Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change . . . .'") (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)). As the Government contends, Congress may not be deemed to have disapproved of the continuing applicability of FAR § 31.204, which provides for the ASBCA to disallow costs found to be "similar or related to" those expressly disallowed under section 31.205.

Furthermore, FAR § 31.205-47(f) disallows legal costs incurred in connection with, *inter alia*, mergers and acquisitions; defense of antitrust suits; defense or prosecution of certain lawsuits between contractors; patent infringement litigation; and lawsuits brought by employees or ex-employees under section 2 of the Major Fraud Act.[6] *See* FAR § 31.205-47(f). None of these legal costs implicate the policy of 10 U.S.C. § 2324(k), that the government avoid financing both sides of a lawsuit. Yet FAR § 31.205-47(f) was substantially the same prior to 1998, the year in which Congress last amended 10 U.S.C. § 2324. Had Congress intended for section 2324(k) to promulgate the universe of unallowable legal costs–or to disallow only those legal costs incurred where the government is already financing one side of the litigation–then Congress would not have countenanced the scope of FAR § 31.205-47(f) when it amended 10 U.S.C. § 2324. Therefore, Congress is presumed to have been aware of,

---

[6]Section 2 of the Major Fraud Act provides for a cause of action for a contractor's employees or ex-employees who have acted in furtherance of a prosecution under the Act and seek a remedy for retaliation suffered as a result. *See Boeing North American*, 298 F.3d at 1288 n. 16.

and to have adopted, an administrative interpretation of 10 U.S.C. § 2324 embracing both the "similar or related to" principle, and the disallowance of legal costs incurred in non-government-initiated proceedings.

Contrary to SWM's contentions, the Court finds that the legislative purpose of section 2324(k) was not to "address exactly and completely the question [of] what costs of legal proceedings are to be unallowable." (Pet'r's Mot. for Summ. J. 13.) Furthermore, Congress provided in 10 U.S.C. § 2324(f) for "[t]he Federal Acquisition Regulation [to] contain provisions on the allowability of contractor costs . . . including legal services." 10 U.S.C. § 2324(f)(1)(H). Providing for administrative rule-making with respect to the allowability of legal costs would make little sense if Congress had intended for section 2324(k) to speak completely, conclusively and exclusively to the subject of what legal costs are allowable.

The precise question at issue in the instant matter is the allowability of a contractor's legal costs incurred in connection with a private party lawsuit for violation of federal law, resulting in imposition of a monetary penalty payable to the U.S. Treasury. Rather than speaking to this precise question, section 2324(k) is silent as to it. The statute's silence must be viewed within the context of the statute as a whole, as well as the regulatory regime–implicitly approved by Congress each time it amended section 2324–that disallows numerous other legal costs aside from those expressly barred by section 2324(k) itself. The Court concludes that FAR §§ 31.204 and 31.205-47(b), which the ASBCA correctly interpreted as disallowing the legal costs at issue, are permissible constructions of 10 U.S.C. § 2324, both singly and in combination.

## VI. Conclusion

The Court **DENIES** Petitioner Southwest Marine, Inc.'s Motion for Summary Judgment (doc. no. 10). The ruling of the ASBCA is **AFFIRMED**.

**IT IS SO ORDERED.**

DATED: December 15, 2006

William Q. Hayes

**WILLIAM Q. HAYES**
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28